IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
NOVEMBER 19, 2002 Session

## JOHN C. IOVINELLI, ET AL. v. STEADMAN H. ESTES, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 94178 T.D.     D'Army Bailey, Judge**

_____

**No. W2001-02968-COA-R3-CV - Filed July 24, 2003**

_____

This is an appeal of the grant of summary judgment. The Appellants contend that the trial judge granted the Appellees summary judgment, *sua sponte*, and that they did not have notice or an opportunity to respond to the issues decided by the judge. We disagree and, for the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W. S., and DAVID R. FARMER, J., joined.

John L. Ryder, Brett A. Hughes, Memphis, TN, for Appellants

Carol M. Hayden, Memphis, TN, for Appellee Steadman H. Estes

E. Patrick Lancaster, Olive Branch, MS, for Appellee Ashworth-Vaughan, Inc.

**OPINION**

**Facts and Procedural History**

This case arises from the construction of Mr. and Mrs. Iovinelli's (the Iovinellis) home. In late 1996, the Iovinellis hired Steadmen H. Estes (Mr. Estes) to build a custom home for them in Collierville, Tennessee. Mr. Estes hired Asworth-Vaughn, Inc. (AVI) to inspect the foundation, posthole and slab system so that they could be certified as meeting the applicable building codes. After the slab was laid, and as construction continued, the slab began to flake and crumble on the surface. The Iovinellis brought in an engineering firm that examined the slab and found several problems. First, samples showed that while the plans called for a strength rating of 3000 p.s.i. for the concrete and the building code called for a strength rating of 2500 p.s.i., the Iovinellis' slab tested in the 2200 p.s.i. range. Subsequently, AVI retracted its

certification to the Construction Code Enforcement office. AVI had also certified that the slab met the construction plans. The Iovinellis' engineering firm, however, pointed out that the slab was poured unevenly on wet soil. A wooden leveling stake was visible coming through slab, and the Iovinellis assumed that other wooden stakes had been left in the slab as it hardened. These stakes extended through the slab into the ground and the Iovinellis were told that this would cause major termite problems. The Iovinellis also alleged that the slab did not meet the reinforcement requirements of the plans, and did not contain the number of post holes, beams or piers shown in the plans.

The Iovinellis brought suit against Mr. Estes and AVI in April of 1998. On November 1, 2001, approximately three weeks before the trial, a hearing was held on Mr. Estes' and AVI's Motions for Partial Summary Judgment. Mr. Estes' motion alleged "failure to state a cause of action . . . regarding alleged deficiencies in the foundation of Plaintiffs' home." AVI filed two motions. The first was titled "Motion for Partial Summary Judgment on the Issue of Work Performed by Defendant Steadman Estes and the Plaintiffs" and contended that AVI, as an independent contractor, should not have the negligence of Mr. Estes or the Iovinellis imputed to it. The second motion was for partial summary judgment on damages and alleged that the Plaintiffs had not established their damages to a reasonable degree of certainty and that damages could not be based on speculation.

After an extended hearing on the motions, the trial judge made the following rulings: that AVI had no liability or responsibility for wooden stakes left in the slab or the possibility of resulting termite damage; that AVI had no liability or responsibility for inaccurate certification of concrete strength or adulteration of concrete used on the slab; Plaintiffs are not entitled to diminution in value damages for the weakened slab or possible termite infestation; that Mr. Estes had no liability or responsibility for damages caused by leaving wooden stakes in the slab, including the possibility of termite damage; that Mr. Estes had no responsibility for any deficiency in the strength of the concrete because of Plaintiffs' lack of expert proof of damages; that the Plaintiffs are not entitled to diminution in value damages for the weakened slab, the potential termite infestation, or inability to get termite coverage on the home. The Iovinellis timely filed an appeal to this court and present the following issues for our review:

I. Whether the trial court erred in granting summary judgment *sua sponte* to the defendants as to issues that were not raised by motions and to which plaintiffs had no notice and no reasonable opportunity to respond.

II. Whether the trial court erred in granting summary judgment *sua sponte* to the defendants as to issues of liability, where genuine issues of material fact exist and the defendants are not entitled to judgment as a matter of law.

III. Whether the trial court erred in granting summary judgment to the defendants as to the issue of damages, where genuine issues of material fact exist and the defendants are not entitled to judgment as a matter of law.

**Law and Analysis**

As we have recently stated:

> The standards governing an appellate court's review of a trial court's grant of summary judgment are well settled in Tennessee. *See Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995). Summary judgment is to be rendered by a trial court "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In ruling on a motion for summary judgment, the trial court and the appellate court must consider the matter in a light most favorable to the nonmoving party and must allow all reasonable inferences in the nonmoving party's favor. *See Carvell,* 900 S.W.2d at 26; *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn.1993). The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn.1997); *Downen v. Allstate Ins. Co.,* 811 S.W.2d 523, 524 (Tenn.1991). Once the moving party satisfies that burden, the burden then shifts to the nonmoving party to set forth specific facts establishing that there are disputed, material facts creating a genuine issue to be resolved by the trier of fact. *See Byrd,* 847 S.W.2d at 215. In appeals from grants of summary judgment, the appellate court must decide whether the trial court correctly applied Rule 56. *See Hill v. Chattanooga,* 533 S.W.2d 311, 312 (Tenn.Ct.App.1975). The appellate court must make an entirely fresh determination because only questions of law are presented; no presumption of correctness accompanies the trial court's decision. *See id.*

*Miele v. Zurich U.S.*, 98 S.W.3d 670, 672 -73 (Tenn. Ct. App. 2002)

The Iovinellis first claim that they did not have notice or a reasonable opportunity to respond to all of the issues considered by the trial court. The Iovinellis contend that the trial judge raised and decided issues beyond the scope of the motions before the court on that day. The Appellees contend that the issues decided by the trial judge were "fully discussed in the 104 pages submitted to the Trial Court by the parties in the way of affidavits, statements of undisputed material facts and memoranda, all in support of the parties' respective motions for partial summary judgment."

**A. AVI's Motions**

The Iovinellis first contend on appeal that since AVI "did not file a motion for summary judgment regarding liability for its negligent inspection," that they did not have proper notice nor an opportunity to respond to the issues decided by the court. However, we feel that a closer

examination of the record before the trial judge, and before us shows otherwise.    In the trial court's written ruling, the trial court stated that AVI "shall have no liability or responsibility for inaccurate certification of the concrete strength or adulteration of concrete used for the slab/foundation system." We will first look at the motions and other materials before the court, and then at the portion of the hearing held on these motions dealing with these issues.

AVI filed two different motions for partial summary judgment.  The first stated, in part, that the Iovinellis "fail[ed] to state a cause of action as to this Defendant regarding deficiencies in the inspection of the foundation and concrete slab of the Plaintiffs' home.  Defendant, [AVI] is an independent contractor hired for the purpose of foundation and concrete slab inspection of the Plaintiffs' home and should not have any negligence on behalf of either the Plaintiffs or Defendant, Steadman Estes, imputed to it."  In the memorandum supporting this motion, AVI, relying on the affidavit of Wesley Ashworth,  stated:

> It is the standard and customary practice in Memphis and Shelby County for the foundation and slab inspector to accept concrete as being the strength reflected on delivery tickets provided by the concrete company.  Further, it is the standard and customary practice in Memphis and Shelby County for the foundation and slab inspector to rely on his or her knowledge of the homebuilder's reputation in the community for the quality of construction and on prior experience in dealing with and inspecting the work of the homebuilder over a period of years.  In the performance of its work in this matter, AVI relied on its knowledge of and past experience in dealing with Estes.  Finally, according to the standards and practices for slab inspection, AVI did not have to be physically present during the pouring of the concrete slab.

AVI argued in this memorandum that it was a independent contractor and should not have anyone else's negligence imputed to it. The Iovinellis conceded that AVI was an independent contractor.  In its second motion, AVI alleged that the Iovinellis had failed to state a cause of action regarding damages because the Iovinellis had "not established within a reasonable degree of certainty the amount of damages and awards of damages cannot be based on speculation." The Iovinellis filed a cross motion for partial summary judgment "on the issue of the defendants' liability for the defective condition of the concrete used for the slab."  The Iovinellis supported this motion with a memorandum in opposition to the defendants' motions and in support of their own.  In this memorandum, the Iovinellis argued that the concrete was 3000 p.s.i. concrete when it arrived  on the site and that water added to the concrete after its arrival was to blame for its weakened condition.  The Iovinellis requested that the court grant it summary judgment on its contention that the defective slab was the result of water added at the site and not the result of latent defects existing when the concrete arrived.  AVI responded to this memorandum with one of their own disputing a number of the conclusions drawn from depositions and some of the factual contentions made by the Iovinellis.  The Iovinellis filed a reply to AVI's response in which it addressed AVI's "misleading 'facts.'"  In this reply, the Iovinellis contested AVI's statement, quoted above, that the standard of care in Shelby county does not require a test of the

strength of the concrete on the site. The Iovinellis cited to the deposition of their engineering expert who stated that his company does test the concrete on site. The Iovinellis next contended that even if AVI was not required to test the concrete on site, a review of the delivery tickets with the amounts of water added to each load would have put AVI on notice that too much water was added to the concrete. In addition to these memoranda, the motions were accompanied by the required statement of undisputed facts from AVI and the Iovinellis' response. The following is a quotation from the Iovinellis' response:

> 20. I am familiar with the standards and practices for foundation and slab system inspections in Memphis and Shelby County, Tennessee, and it is the standard and customary practice to accept concrete as being the strength reflected on delivery tickets from the concrete company (Affidavit of Wesley Ashworth, paragraph 23).
> RESPONSE: This is not a statement of fact and is not relevant or material. The plaintiffs dispute the accuracy of this statement taken from the affidavit of Mr. Ashworth.
> When the concrete delivery tickets show that excessive amounts of water were added to the concrete after it was delivered, then a qualified inspector should have known the concrete used in the construction was not of the strength relected on the delivery tickets.
> . . . .
> [Scott Arnold] further testified that he never tested the concrete and acknowledged that hed did not actually know the strength when he reported that it was 3,000 p.s.i. [Deposition of Scott Arnold, pps. 22, 25, 65-66].
> 21. It is standard and customary practice in Memphis and Shelby County, Tennessee for the inspector to rely on his or her knowledge of the homebuilder's reputation in the community for quality of construction and on prior experience in dealing with and inspecting the work of the homebuilder over a period of years. (Affidavit of Wesley Ashworth, paragraph 24).
> RESPONSE: Disputed. An inspector cannot simply rely on a builder's reputation when certifying a slab system. The inspector has a duty to conduct a proper independent inspection of the site to determine whether the builder has constructed the slab system in accordance with the requirements of the plans and the Code. Otherwise, there would be no reason to hire (and pay) an engineering firm to inspect a site. AVI's statement is not an undisputed, relevant or material fact.
> . . . .
> 26. The inspection of the foundation and slab system which took place at the new Halle Plantation home of the Plaintiffs met the standard for foundation and slab system inspections in the Memphis and Shelby County area (Affidavit of Wesley Ashworth, paragraph 29).
> RESPONSE: The plaintiffs have sued AVI for its negligence in conducting what amounted to a sham inspection of the foundation/slab system.

This "Statement of Undisputed Material Fact" is obviously disputed by the plaintiffs, and it is improper for the defendant AVI to represent to the Court otherwise.

At the hearing on the motions, after deciding another matter, the judge stated that he had read "all this material" and had determined "that nobody outside of [AVI] has given me any kind of expert proof as to what AVI's duty was." The judge directed the question to the Iovinellis since the Iovinellis had alleged a breach of duty. In response, the Iovinellis stated that they were relying on the depositions of Mr. Ashworth, the president of AVI, and Dr. Ken Hall, the Iovinellis' expert witness from the engineering firm of Hall, Blake, and Associates. The trial judge first focused on whether or not AVI had a duty to independently test the strength of the concrete. In response to the judges questioning, the Iovinellis stated that they were relying on proof from Dr. Hall to establish that AVI had a duty to test the concrete. Upon reviewing Dr. Hall's deposition, the judge determined that Dr. Hall testified to the practices of his company and not the standard in the industry. The judge, after reading portions of Dr. Hall's deposition, characterized Dr. Hall's testimony on testing the concrete as "[h]e says it's uncommon to [test] and not uncommon not to [test]." The judge continued, apparently[1] quoting Dr. Hall before making an initial ruling on this issue: "I don't want to tell you that they all do that. Just a lot do to cover themselves. It's just a good idea. I don't think that reaches the standard issue here, so if that's all you're riding on as it relates to the investigation of the concrete from the Hall proof, then it fails." Next, the judge returned to the Iovinellis' statement that they were relying on Mr. Ashworth's statement of the standard of care when the following exchange took place:

> THE COURT: Can you tell me where in the Ashworth – again, talking to the record, where there is the evidence that Ashworth sets forth a standard because obviously we have to for purposes of this hearing determine that they're in the business and, therefore, would know the standard at least as they see it. And so the question would be where do they give us the standard of what is supposed to be done. And we can then look at that standard against what the record shows allegedly it was not done.

> MR. RYDER: Your Honor, we would have been happy to brief that point if it was raised by the plaintiffs or defendants but I didn't see where this particular issue was raised in their memoranda.

> THE COURT: Well, it's raised in the context that the Iovinellis say that AVI had a duty to test the concrete. And so it's raised in the context, well, how do you reach the threshold of saying they had a duty to test the concrete?

> MR. RYDER: . . . . Your Honor had made it more important specific. And I think I understand what we're talking about. It's not generally but specifically

---

[1] The deposition of Dr. Hall was not included in the record before us.

-6-

was there a duty among AVI's other duties was there a duty to test the concrete. That's the specific question. And, yes, that is raised and addressed. And that we think is addressed by Dr. Hall's testimony. . . .

. . . .

MR. RYDER: I think that what we're talking about here is this issue is as raised by the defendants in their motion as I understood their motion was the question of whether they were absolved from any responsibility for alleged defects in the concrete as delivered by Cordova Concrete.

THE COURT: Well, that wasn't what I was talking about. What I . . . . was dealing with was whether or not there was a duty of AVI by this inspection to quote test their concrete unquote. . . .

MR. RYDER: We think Hall's deposition certainly suggests that. I don't think he comes out and says that squarely in his deposition. I'm not sure that they did have a duty to test the concrete.

. . . .

THE COURT: And so on the test question it would be the Court's opinion that there's not a sufficient foundation laid for that to be a claim.

MR. RYDER: So you're saying there's no duty to test?

THE COURT: I'm saying that that's not been presented on the record that there is such a duty by any . . . . competent legal proof in the face of a motion for summary judgment that raises that question among others.

After ruling that AVI did not have a duty to test the concrete, the judge inquired as to what other duties the Iovinellis alleged were breached by AVI. The Iovinellis responded that AVI had "failed to accurately certify the slab" referring to the requirement in the plans of 3000 p.s.i. concrete and in the building code of 2500 p.s.i concrete. The judge then asked what the "reasonable, customary, and ordinary practice in the industry by which the ascertainment and certification of the PSI is and . . . where in the record do you set that forth?" The Iovinellis responded that they were not sure that such a standard existed, but that AVI was required to "come up with the right number" regardless of what method was used. After further discussion, the judge found that while it is undisputed that the concrete was not of the strength required, the Iovenellis had no proof that AVI had violated the standard of care in conducting the certification. The judge then, after determining that no other issues existed relating the liability of AVI, granted AVI a full summary judgment.

The Iovinellis objected, stating that the motions were for partial summary judgment dealing with three narrow issues and that the Iovinellis responded only to those issues and had not obtained affidavits pertinent to the other issues ruled on by the court. After some discussion, the following exchange took place:

> THE COURT: But that's on the damage question. Now, on the question of the concrete, of course, again, in the materials that I read last night there was thorough discussion about this duty to evaluate the concrete and the wrong certification.

> MR. RYDER: And the postholes, and the posthole system, that was the other issue.

> THE COURT: All of that was discussed, so I don't see how you're going to say that that was not what you were noticed as to the issues before the Court. The only reason I'm asking that is because I certainly don't want to – I would be in error to predicate summary judgment rulings on things that you had not been given advanced alertness that these were issues in dispute but everything I talked about came out of the material that I had been handed. . . .

> MR. RYDER: With all due respect, Your Honor, we disagree with your characterization of the motions Your Honor has reviewed. We think that the motions were limited very specifically to the issues of whether or not defendants were liable for defects in the concrete as it came from Cordova Concrete and whether or not – and the scope of damages and then the third issue of vicarious liability for AVI, which we already I think agreed and conceded in our memorandum that AVI is an independent contractor.

> THE COURT: Well, what was the purpose of the discussion about the erroneous certification?

> MR. RYDER: Well, Your Honor, I'm happy to respond to any question Your Honor puts to me.

> THE COURT: But there was – you didn't deal in any of your earlier memorandums with the issue of the duty of AVI as it relates to the strength of the concrete?

> MR. RYDER: I believe we only dealt with the duty of AVI vis-a-vis the condition of the concrete when it arrived, which was the focus of their – which was their motion for partial summary judgment on that point.

> THE COURT: Perhaps you can help me on this.

MR. RYDER: It was a very limited motion for partial summary judgment.

THE COURT: Mr. Lancaster.

MR. LANCASTER: If Your Honor please, I thought it was fully discussed in the memorandum which had been handed to the Court.

THE COURT: So did I.

MR. LANCASTER: And the discussion of what the duty was on the part of AVI to make any inspection, what the scope if that inspection entailed. And that's what – you know, it was raised in the affidavit of Mr. Ashworth. It has been pointed out by Your Honor. We have recited fairly extensively to the deposition of their expert, Dr. Hall. And that's been discussed on both sides, so I think it's been presented.

. . . .

THE COURT: I might just say here, Mr. Ryder, looking at what was filed with the Court on the 25th day of June, 2001 Plaintiff's Memorandum in Response to Defendant's Motions for Partial Summary Judgment on the second page it says the defendants have filed motions for partial summary judgment which address the following issues: One, whether the defendant AVI is an independent contractor; two, whether the defendants are liable for the defects in the concrete used for the construction of the slab in the plaintiff's home; and, three, the proper measure of damages.

As shown above, AVI in its statement of undisputed material facts and its memorandum asserted the standards of care for slab inspections in Shelby and properly cited to the record for support. In response, the Iovinellis disputed the standards, but made only bald assertions with no citation to the record for support. When questioned by the trial judge as to where in the record the Iovinellis had expert proof to dispute the standards of care, the Iovinellis pointed to a memorandum filed in support of their motion for partial summary judgment for support for their position. This motion in pertinent part reads:

AVI continues to grasp at straws in its attempt to avoid responsibility for its sham inspection and its failure to recognize that excessive amounts of water were added to the concrete by the defendant Estes' subcontractor prior to certifying that the slab complied with the Code requirements. AVI claims as fact that an inspector is not normally present when a slab is poured and that the "overwhelming proof" indicates that testing of the concrete is not done in residential construction. However, the plaintiffs' expert Ken Hall with the engineering firm of Hall, Blake & Associates testifed that HBA performs both

-9-

commercial and residential inspections and that HBA does test the concrete when inspecting residential construction. (Deposition of Ken Hall, p. 92, 94, 96-7). Thus, the plaintiffs' expert witness disputes AVI's statement of "fact" on this issue. AVI's statements certainly are not supported by "overwhelming proof" as it suggests.

Later in the same memorandum, the Iovinellis stated:

There were a number of defects with the property due to the construction methods and materials used by Estes and due to AVI's failure to properly inspect the property's foundation, post hole and slab system. The primary problem with the construction is with the foundation/slab.

The defects with the slab that are material to the resolution of the defendants' motions and the plaintiffs' cross-motion on the issue liability for the defective concrete are (1) that the slab was not of the strength set forth in the plans, not of the strength certified by AVI, nor of the strength required by Code and (2) that the slab's surface chipped away and flaked during the framing of the house.

The trial judge considered two issues at the hearing before ruling that AVI was not liable for the inaccurate certification. On the first issue, whether or not AVI was required to independently test the strength of the concrete, the Iovinellis made the following statement in response to the trial judge's questioning: "specifically was there a duty among AVI's other duties was there a duty to test the concrete. That's the specific question. And, yes, that is raised and addressed." We agree and find that this issue was raised and addressed in the materials before the trial judge including AVI's statement of undisputed facts, and the Iovinellis's response among others cited above. Thus, we find the Iovinellis had notice and an opportunity to respond to this issue.

The second issue concerning the duty of AVI to accurately certify the strength of the slab was brought up at the hearing by the Iovinellis, as quoted above, when the trial court asked what other duties did the Iovinellis allege that AVI had breached. Again, the trial judge found no proof in the record to counter AVI's statement of the appropriate standard of care. The trial judge examined depositions that we do not have before us, and made a finding that Dr. Ken Hall's testimony did not state the applicable standard of care. Because these depositions were not included in the record before us, there is a presumption that the trial judge's findings on this matter are correct. *See Hailey v. Fowler*, 849 S.W.2d 770, 772 (Tenn. Ct. App. 1992) ("where the trial evidence existed to support the trial court's judgment....This is so even when the case involves a summary judgment.") We find that the matters decided by the trial judge on this issue were raised in the material before the trial judge, including AVI's statement of undisputed material facts and the Iovinellis' response among other documents cited above. The Iovinellis had notice and an opportunity to respond to this issue.

The Iovinellis next contend that "Estes did not move the trial court for summary judgment on the issue of liability." The Iovinellis argue that Mr. Estes' only argument in support

of his motion regards the proper measure of damages and that "there is not argument in either memoranda regarding Estes' liability for the deficiencies in the foundation of Plaintiffs' home resulting from the weakened, watered-down slab . . ." The trial judge granted Estes partial summary judgment stating that Mr. Estes "shall have no responsibility for any deficiency in the strength of the concrete used for the slab/foundation of Plaintiffs [sic] home *as the Plaintiff lacks expert proof of said damages*." (emphasis added). A review of Mr. Estes' motions and other materials before the court show that Mr. Estes moved the court for "partial summary judgment for failure to state a cause of action as to this Defendant regarding alleged deficiencies in the foundation of Plaintiffs' home." Mr. Estes filed two memoranda in support of his motion. In the first memorandum, Mr. Estes contended that the Iovinellis' damages should be limited to "all known, certain, non-contingent and non-speculative deficiencies." Any other damages, Mr. Estes alleged, were "not supported by any facts or [were] otherwise speculative at best."

At the hearing, the judge, counsel for Mr. Estes, and counsel for the Iovinellis argued several issues and then arrived at the damages issue involving the weakened foundation:

> MR. RYDER: . . . . But the real damage issue here, which is the issue I think raised in the motion for partial summary judgment, goes to Mr. Trotz' testimony that the weakened foundation creates – is part of the stigma that reduces the value of this house . . .[because] the Iovinellis have a foundation which . . . . does not meet Code.
> THE COURT: All right. Wait a minute. If he's got a witness that says that the weakened foundation weakens the value, Ms. Hayden, then how can you say that there isn't any damage?
> MS. HAYDEN: Because I've never heard his witness, Eric Trotz, talk about the weakened foundation affecting the value of this home . . .

The judge and the parties then examined the depositions of Mr. Trotz. The judge determined that Mr. Trotz had been asked specifically about damages resulting from the weakened slab and had made no determination at that time and had made no determination since. The judge ruled that the Iovinellis had no expert proof that the weakened slab caused the Iovinellis damage and, therefore, granted summary judgment to Mr. Estes on this issue. The Iovinellis objected that they were not aware that this issue would be determined, but that they were prepared to discuss the "proper measure of damages."

On appeal, the Iovinellis contend that this issue was decided *sua sponte* and that they did not have notice or an opportunity to respond. We disagree. As counsel for the Iovinellis stated, "[The issue of damages resulting from a weakened slab] is the issue I think raised [sic] in the motion for partial summary judgment." We find that the Iovinellis can not now come to this Court and argue that they did not have notice of this issue and the Iovinellis' contention is denied.

Next, the Iovinellis contend that the above issues were decided wrongly because "genuine issues of material fact exist and the defendants are not entitled to judgment as a matter of law." In their brief, under this issue, the Iovinellis address three issues. First, whether "[d]isputed issues of material fact exist as to liability for the deficiency in the strength of the concrete." Second, whether "[d]isputed issues of material fact exist as to liability for the wood leveling stakes in the slab." Finally, whether [d]isputed issues of material fact exist as to AVI's liability for its negligent inspection on this disputed issue."

In their argument section under each of these issues, to support their arguments, the Iovinellis cite either to depositions or to their "Memorandum of Law in Response to Defendants Motions for Partial Summary Judgment and in Support of Plaintiffs Cross-Motion for Partial Summary Judgment" which cites to certain depositions. These depositions were not included in the record. The Appellees, citing Tennessee Rule of Appellate Procedure 24, allege that the Iovinellis have not prepared a record which gives a "fair, accurate and complete account of what transpired" and cite the following case law contending that we should not address the issues raised by the Iovinellis:

> When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal. *State v. Bunch,* 646 S.W.2d 158, 160 (Tenn.1983). Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue. *State v. Roberts,* 755 S.W.2d 833, 836 (Tenn. Ct. App.1988). Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue. *See* T.R.A.P. 24(b).

*State v. Ballard*, 855 S.W.2d 557, 560 - 61 (Tenn. 1993)

We agree with Appellees' contentions. We cannot determine whether genuine issues of material fact exist by examining certain portions of depositions chosen and quoted by the Iovinellis without having the deposition itself to examine for accuracy and context. Thus, as stated in *State v. Ballard* above, absent this relevant material in the record before us, we will not consider the merits of these issues.

The Iovinellis' last issue on appeal addresses the issue of damages. The Iovinellis first argue that there "are disputed issues of material fact as to the proper measure of damages." Again, the Iovinellis rely exclusively on and quote extensively from deposition testimony that was not included in the record before us to support their arguments on these issues. Because the relevant deposition materials are not before us, we decline to address this issue for reasons already stated.

The last issue to be addressed is the allegation by the Iovinellis that their damages are not speculative in nature. The one issue decided by the trial court relating to speculative damages involved termite damage. We will first look at the motions and the portion of the hearing dealing with AVI and then the motions and portions of the hearing on this issue relating to Mr. Estes.

The trial judge focused specifically on the Iovinellis' claim that wooden leveling stakes left in the slab created a permanent stigma on the house because of the danger of termite infestation - a danger the Iovinellis claimed prevented them from obtaining complete termite coverage on the house. The defendants alleged this claim was impermissible speculation. The parties informed the judge that there had been one stake visible in the slab and that it had been repaired and removed. The Iovinellis stated that the subcontractor who poured the concrete would testify that it was his practice to use as many as ten or twelve stakes in a slab such as the one under the Iovinellis' home. Mr. Estes and AVI contended that there was no proof that there were any other stakes. The trial judge inquired as to what expert proof the Iovinellis had to show, assuming there were stakes under the slab, how termites would infest the house through the concrete covering the stakes. The Iovinellis stated that they had no such expert proof but that Mr. Iovinelli would testify that he could not obtain a complete termite protection contract. The judge then ruled on the issue stating:

> [T]here are two problems on this termite matter. One is the speculative nature of the claimed harm, to wit: That there may be sixteen wooden stakes embedded in the concrete and there may not. Even if we reached a point of saying from . . . Mr. Owens . . . that probably there are because of the way we built this, then you've got a question, well, if those sixteen are covered by concrete how much concrete covers them, is it one inch, two inches, three inches, and can termites penetrate such as to cause harm?
> . . . .
> And the next question is, well, we know there was one that was taken out. Well, how does that create a termite problem? And where is the proof on it and who's qualified to offer it absent that? And the next one is if there are sixteen of them and they are all covered by concrete where is the termite problem as far as certification?
>      Now, I'm not having another hearing on motions. [The judge had previously noted that this hearing was some three weeks before trial and three and a half years into the case.] And this information should have been ready to present it today or at least affidavits of experts . . . . So my thinking is in the absence of that that termite issue essentially won't meet the legal test to go to the jury.

The ruling in the trial judge's written order states that AVI would not be held liable or responsible for any damages resulting from the wooden leveling stakes allegedly being left in the concrete slab as it dried "including, but not limited to the risk of termite infestation." The Iovinellis claim on appeal that the basis for the trial court's ruling "that the defendants are not

liable for the deficiency in the slab caused by the presence of wood stakes is unclear." The Iovinellis also contend that "the basis for the Court's ruling seems to be the Court's belief that there are no more stakes in the slab." We disagree. The reasons for the trial court's ruling are very clear in the transcript and are set out above. The trial court determined that the damages resulting from the possibility of wooden stakes being left in the slab were speculative and, furthermore, that despite the passing of the deadline for designating experts, the Iovinellis had no expert proof to explain how wooden stakes covered by concrete would provide ingress for termites. Our *de novo* review of the record before us brings us to the same questions raised by the trial judge and to the same conclusion. It has been held that:

> Damages may never be based on mere conjecture or speculation. *Western Sizzlin, Inc. v. Harris,* 741 S.W.2d 334, 335-36 (Tenn. Ct. App. 1987); *Nashland Assocs. v. Shumate,* 730 S.W.2d 332, 334 (Tenn. Ct. App. 1987). However, uncertain or speculative damages are prohibited only when the existence, not the amount, of damages is uncertain. *Jennings v. Hayes,* 787 S.W.2d 1, 3 (Tenn. Ct. App. 1989); *Cummins v. Brodie,* 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983). Evidence required to support a claim for damages need only prove the amount of damages with reasonable certainty. *Airline Constr., Inc. v. Barr,* 807 S.W.2d at 274; *Redbud Coop. Corp. v. Clayton,* 700 S.W.2d 551, 561 (Tenn. Ct. App. 1985).

*Mercer v. Vanderbilt University, Inc.,* 2002 WL 31728864, at *15, (Tenn. Ct. App. Dec. 5, 2002)

Here, the lack of expert proof on this issue leaves only speculation as to whether or not the Iovinellis have or will ever suffer damages resulting from the possibility of termite infestation through the wooden stakes allegedly left in the concrete slab. Thus, summary judgment for AVI was appropriate as to disallowing any damages resulting from the stakes allegedly remaining under the slab.[2]

Mr. Estes in his materials before the court also pointed to the termite damages as speculative, stating: "[T]he Plaintiff seeks to recover damages for the *possibility* that there are additional stakes in the foundation that might act as a conduit for termites. Such possibility is pure speculation by the Plaintiff is [sic] and is not a basis for awarding damages." (emphasis in original). Upon taking up Mr. Estes' motions, the court first addressed the Iovinellis' allegation that wooden leveling stakes had been left in the slab. The Iovinellis stated to the court that the proof against Mr. Estes would be the same as that presented against AVI. The court ruled saying "All right. Then the ruling would be the same." In the trial court's written order, the trial court found that Mr. Estes "shall have no liability or responsibility for damages resulting from wood stakes allegedly left in the slab of Plaintiffs' home, including, but not limited to the risk of termite damages." On appeal, the Iovinellis contend that "the only mention of wood leveling

---

[2] This ruling obviously does not apply to the wooden stake that protruded through the slab and the cost of its removal and repair to the slab.

stakes in Estes' memoranda is a passing reference in connection with his discussion of the Iovinellis knowledge of defects. Estes makes no assertion that he is entitled to summary judgment on the issue of liability for this defect in the slab." Our review of the record finds otherwise. As quoted above, Mr. Estes specifically alleged the speculative nature of the damages alleged by the Iovinellis regarding the wooden leveling stakes in his memorandum supporting his motion concerning damages. Thus, our decision concerning Mr. Estes is the same as our decision concerning AVI on this issue, namely that summary judgment was appropriate, for the reasons stated above regarding that decision. While it may be true that Mr. Estes did not allege he was not liable for allegedly leaving the stakes in the slab, our decision that no damages can be recovered makes liability a moot point.

## Conclusion

For the foregoing reasons, we affirm the trial court below. Costs of this appeal are taxed to the Appellants, John and Nancy Iovinelli, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

-15-